340 So.2d 483 (1976)
KERR-McGEE CHEMICAL CORPORATION, a Delaware Corporation, Appellant,
v.
CHB FARMS, INC., a Florida Corporation, et al., Appellees.
No. 75-1570.
District Court of Appeal of Florida, Fourth District.
November 5, 1976.
Rehearing Denied January 11, 1977.
*484 Ralph W. Nimmons, Jr., Douglas H. Morford, Ulmer, Murchison, Ashby & Ball, Jacksonville, for appellant.
Craig R. Wilson, Ruffolo & Wilson, West Palm Beach, for appellees.
DOWNEY, Judge.
We have for review the propriety of the trial court's refusal to direct a verdict on behalf of appellant, Kerr-McGee Chemical Corporation, against the appellees, Executors of the Estate of Charles H. Brady, Jr., in a suit appellant had filed against Brady (who died during the prosecution of this litigation), and others, based upon a contract of guaranty.
Appellant's predecessor sold various farm products to CHB Farms, Inc., between July 1970 and April 1971. Appellees, Horton and Brady, the principal owners of that corporation, executed a guaranty agreement with appellant's predecessor in which they unconditionally guaranteed payment of any indebtedness incurred by CHB to appellant's predecessor and its successors or assigns. The agreement also provided that it could be modified only in writing signed by the parties and that it should remain in full force and effect until written notice of its termination was received by registered mail by appellant's predecessor at its office in Jacksonville, Florida.
In June 1970 Brady sold his interest in CHB to Horton at a time when said corporation was indebted to appellant. After appellant learned from Horton that Brady was no longer connected with the corporation, appellant directed its salesman, Livengood, to obtain (a) notes from CHB representing the current indebtedness and (b) an additional guaranty agreement from Horton and his wife. Livengood did as he was directed.
Eventually appellant sued CHB, Brady, and the Hortons in three counts: (a) on an open account, (b) on the guaranty agreement signed by Horton and Brady, and (c) the guaranty agreement signed by Mr. and Mrs. Horton.
At the close of the evidence appellant made a motion for a directed verdict against the Co-executors of Brady's estate. The court denied the motions. The jury returned a verdict in favor of appellant as to Mr. and Mrs. Horton, but against appellant as to the Co-executors of Brady's estate. Kerr-McGee appealed from the final judgment in favor of the Co-executors, contending that the court should have directed a verdict in its favor.
Initially, Brady had filed numerous affirmative defenses, including one asserting that Brady had been discharged and released *485 from his guaranty agreement by virtue of appellant's obtaining the additional guaranty agreement from Mr. and Mrs. Horton. That affirmative defense and others were stricken by the trial court. The only affirmative defenses not stricken asserted lack of consideration and lack of mental capacity. The appellees, Co-executors, concede that neither of the latter defenses was proven at trial. The trial judge instructed the jury:
"The issue for your determination on the claim of the Plaintiff Kerr-McGee against the Defendant Estate of Charles H. Brady, Jr., is whether the guaranty agreement of 1969 was terminated under the provisions of the agreement or by agreement of the parties."
In our opinion the record is devoid of any evidence upon which to base even a reasonable inference that Brady was discharged or released from his guaranty agreement. Viewing the evidence most favorably in support of the verdict, we find absolutely no communication whatsoever between Brady and appellant. Appellees rely solely upon the following facts to support their position that there was sufficient evidence to permit the jury to find that Brady had been discharged from his obligation on the 1969 guaranty agreement.
After Brady severed his relationship with CHB, Horton advised Livengood, a salesman for appellant, of the severance. Forrester, appellant's credit manager, sent a memo to Livengood and told him to obtain two promissory notes from CHB to represent their current debt to appellant. In addition, the memo directed Livengood to have both Mr. and Mrs. Horton sign an enclosed additional guaranty agreement. The memo concluded with the admonition, "as the Chinese say, no notes  no guaranty  no credit." CHB signed the notes and the Hortons signs the guaranty agreement.
The Horton guaranty was silent as to any effect it might have on the prior Brady-Horton guaranty. Horton testified that, after Brady terminated his relationship with the corporation, Livengood came to Horton and brought the notes and additional guaranty "because the old one was no longer any good since Brady was no longer a member of the corporation... ." Forrester testified that he obtained the additional guaranty after Brady left the corporation "to strengthen the account." He acknowledged that it was perhaps not legally correct. Appellant had received a notice of sorts that "Brady wanted out" and Forrester wanted to "get additional security by tying Mr. Horton more closely to the debt by bringing his wife into it." We think the foregoing factors were insufficient to raise a jury question as to Brady's liability as a guarantor and that the following factors demonstrate that the court should have directed a verdict in appellant's favor as to Brady's liability.
First, there was no evidence to show that the Horton guaranty was designed to take the place of the Brady-Horton guaranty. Because of this lack of evidence, the Horton guaranty was simply an additional security agreement for appellant's protection, it did not relieve Brady of his obligation under the 1969 guaranty agreement. Bryant v. Food Mach. & Chem. Corp. Niagara Chem. Div., 130 So.2d 132 (Fla.3d DCA 1961); 38 Am.Jur.2d, Guaranty, § 85; 38 C.J.S. Guaranty § 35. Nor can the statement made by the salesman, Livengood, that the old agreement was no good because Brady was no longer a member of the corporation be taken as anything more than Livengood's opinion as to the effect of Brady's departure on the agreement. Moreover, the termination of Brady's interest in the corporation did not also terminate his liability on the guaranty agreement. Franklin Nat. Bank of Long Island v. S & L Const. Corp., 16 A.D.2d 682, 227 N.Y.S.2d 577 (1962). Last, Brady did not attempt to terminate his liability by writing the appellant in accordance with the provisions of the agreement, so no other act by Brady could constitute a termination. Haynie v. First National Bank of Atlanta, 117 Ga. App. 766, 162 S.E.2d 27 (1968); Manufacturers' Finance Co. v. Rockwell, 278 Mass. 502, 180 N.E. 224 (1932).
*486 We, therefore, hold it was error to deny appellant's motion for directed verdict against the appellees, Fidelity National Bank of Pa. and Mary Catherine Brady, as Co-executors of the Estate of Charles H. Brady, Jr., deceased. Accordingly, the judgment for said appellees is reversed and the cause is remanded to the trial court with instructions to enter judgment for plaintiff-appellant, Kerr-McGee Chemical Corporation, and against the Co-executors of the Estate of Charles H. Brady, Jr., deceased for $13,141.15 (the amount due plaintiff of $14,230.15, less the set-off of $1,089.00).
REVERSED AND REMANDED.
ALDERMAN, J., and DANAHY, PAUL W., Jr., Associate Judge, concur.